# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **RENA R. LINDLEY,** ) | |
| ) | |
| **Plaintiff,** ) | **CIVIL ACTION** |
| ) | |
| **v.** ) | **No. 14-1426-JWL** |
| ) | |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance benefits (DIB) under sections 216(i) and 223 of the Social Security Act. 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error in the final decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING that decision.

## I.    Background

On September 14, 2010 Plaintiff applied for DIB, alleging disability beginning March 6, 1992. (R. 38, 184). Because Plaintiff continued to work until approximately May 5, 1995, she amended her alleged onset date to that date. (R. 54-55). She exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. Plaintiff argues that the Administrative Law Judge (ALJ) erred at step

two of her decision, in considering the opinion of her treating psychiatrist, Dr. Kliewer, and in determining the credibility of her allegations of symptoms during the relevant period before her date last insured (DLI).

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by

other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord,

3

Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.

At step five, the burden shifts to the Commissioner to show that there are jobs in the

economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084,

1088 (10th Cir. 1999).

The court finds no error in the decision at issue.

## II.   Discussion

The ALJ decided this case at step two of the sequential evaluation process.  At step

two it is Plaintiff's burden to show that she had a severe medically determinable

impairment before her date last insured.  20 C.F.R. § 404.1520(a)(4)(ii).  The

determination at step two is based on medical factors alone, and not on vocational factors

such as age, education, or work experience.  Williamson v. Barnhart, 350 F.3d 1097,

1100 (10th Cir. 2003).  A claimant must provide medical evidence that she had an

impairment and how severe it was during the time she alleges she was disabled.  20

C.F.R. § 404.1512(c).  As the regulations note, "[i]f you do not have a severe medically

determinable physical or mental impairment . . . we will find that you are not disabled."

Id. § 404.1520(c) (emphasis added).

A claimant must show a medically determinable physical or mental impairment

resulting from "anatomical, physiological, or psychological abnormalities which can be

shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R.

§ 404.1508.  This "impairment must be established by medical evidence consisting of

signs, symptoms, and laboratory findings," but not merely by a claimant's statement of

4

symptoms alone.  Id.  The regulations define signs, symptoms, and laboratory findings.

Id. 404.1528.  Signs are "anatomical, physiological, or psychological abnormalities which

can be observed apart from [the individual's] statements (symptoms)," and they "must be

shown by medically acceptable clinical diagnostic techniques.  Psychiatric signs are

medically demonstrable phenomena that indicate specific psychological abnormalities,"

and "must also be shown by observable facts that can be medically described and

evaluated."  Id. at (b).  Symptoms are an individual's "description of [her] physical and

mental impairment," but the individual's descriptions by themselves "are not enough to

establish that there is a physical or mental impairment."  Id. at (a) ("Your statements

alone are not enough to establish that there is a physical or mental impairment."

(emphasis added)).  Laboratory findings are "anatomical, physiological, or psychological

phenomena which can be shown by the use of medically acceptable laboratory diagnostic

techniques," including psychological tests.  Id. at (c).

Limitations attributed to impairments which are medically determinable but are not

severe must be considered at later steps in the evaluation, whereas alleged limitations

attributable to impairments which are not medically determinable must not be considered

at later steps.  20 C.F.R. §§ 404.1508, 404.1523, 416.908, 416.923; see also, Rutherford

v. Barnhart, 399 F.3d 546, 554, n.7 (3d Cir. 2005) (to be considered, an impairment must

be medically determinable, but need not be "severe"); Gibbons v. Barnhart, 85 F. App'x

88, 91 (10th Cir. 2003) ("the ALJ must consider only limitations and restrictions

attributable to medically determinable impairments.") (quotation omitted).

Here, the ALJ determined that Plaintiff did not meet her step two burden of proof:

> Having carefully reviewed the evidence, the undersigned finds that the claimant has not met her burden of proof to show that she suffered from medically determinable, much less severe, psychological impairments prior to the period of adjudication. As for her medically determinable physical impairments, the undersigned finds that these impairments did not result in significant functional impairments. Accordingly, the undersigned finds that the claimant has not demonstrated that she suffered from any severe impairments during the period of adjudication.

(R. 44). Plaintiff does not argue before this court that her physical impairments were severe before her date last insured, so the court will not further discuss that issue except to the extent it may affect the step two decision regarding mental impairments. Plaintiff submitted additional evidence which the Appeals Council accepted and made a part of the administrative record in this case, and which Plaintiff argues makes the ALJ's burden of proof finding at step two erroneous. (Pl. Br. 5); see also (R. 7-8, 305-06, 895-1081). Therefore, the question before the court is whether the record evidence including the additional evidence made a part of the record by the Appeals Council demonstrates that Plaintiff met her burden of proof of a medically determinable psychological (mental) impairment before her date last insured--December 31, 2000.

## A.      The ALJ's Findings Regarding Evidence of Mental Impairments

The ALJ recognized that in 1992 Plaintiff witnessed at close range the brutal murder of one coworker by another coworker, who shot the first coworker four times in the stomach and twice in the head. (R. 41). She acknowledged Plaintiff's testimony that "since witnessing this killing she has suffered from persistent panic attacks, anxiety,

hypervigilance, and flashbacks," that "she is uncomfortable around people, and startles

easily in response to loud noises," and that she returned to work but her symptoms

continued and grew progressively worse.  Id.  The ALJ recognized that Plaintiff "quit her

job in May of 1995, opting not to return to work following maternity leave," and that

Plaintiff testified that she tried to work part time on several occasions thereafter but was

unable to tolerate it due to chronic anxiety symptoms  Id. at 41-42.   The ALJ found

Plaintiff's allegations of symptoms "not entirely credible."  Id. at 42.

The ALJ explained both Plaintiff's failure to meet the burden of proof regarding

mental impairments and the ALJ's credibility determination:

> As an initial matter, the undersigned wishes to be quite clear that there is no
> doubt that the claimant currently suffers from symptoms of anxiety and
> post-traumatic stress disorder that affect her ability to engage in work
> activity.  The problem in this case, however, is that the claimant's insurance
> coverage for Title II disability benefits expired at the end of 2000, and there
> is simply no evidence that she experienced any significant psychological
> difficulties until 2004 at the earliest (Exhibit 3F at 60 [(R. 431)]).  The
> claimant has submitted a copy of a prescription for Wellbutrin that dates to
> 1998, presumably in order to show psychiatric treatment prior to the date
> last insured (Exhibit 22F [(R. 877)]).  A study of her medical records,
> however, reveals that this drug was prescribed, not for depression, but
> rather to help the claimant quit smoking (Exhibit 1F at 10 [(R. 316)]).
> Further, none of the claimant's medical records for the period of
> adjudication even hint at the existence of anxiety or depressive symptoms
> (Exhibit 1F [(R. 307-33)]).  Indeed, while the claimant has alleged that she
> began struggling with depression in the immediate aftermath of her
> experience in 1992, she has acknowledged that her symptoms have
> progressed over time (Exhibit 5F at 8 [(R. 473)]).  The undersigned also
> notes that the claimant continued to work at the level of substantial gainful
> activity until 1995, about three years after her trauma, suggesting either a
> delayed onset of symptoms, or some intervening cause (Exhibit 3E [(R.
> 216-23)]).  It is also far from clear that the claimant's decision to quit
> working in 1995 had anything at all to do with the psychological issues she

is now experiencing.  As she mentioned in her hearing testimony, the claimant had just delivered a child immediately prior to leaving the workforce, and it is not at all implausible that this influenced her decision to quit working.  In any event, the undersigned simply cannot conclude with any certainty, based upon the available evidence, that the claimant experienced any significant mental impairment prior to the date last insured, much less that she was disabled due to symptoms for which there is no documentation until much later.

(R. 42).  Later in her decision, the ALJ noted that Plaintiff's financial interest in the outcome of the disability proceedings and the evidentiary inconsistencies in the record provide further reasons to discount her credibility.  (R. 44).

The ALJ accorded little weight to the medical opinion of Dr. Kliewer because he only treated Plaintiff since November of 2010, because he had no direct knowledge of Plaintiff's condition before December 2000, because there is no record of psychological treatment before February, 2004, because Dr. Kliewer's opinion regarding the onset of disability "is of necessity, highly speculative, and based exclusively upon the claimant's own subjective reports," and because although "it is tempting to suppose that the claimant experienced some emotional distress secondary to her trauma, there is simply no evidence to adequately assess her mental state during the period of adjudication."  (R. 43).

## B.    Analysis

Appropriately, Plaintiff does not argue that the record before the ALJ cannot support the decision, because evidence in the record at that time amply supports the findings.  Rather, she argues that the evidence subsequently presented to the Appeals Council "render[s] inaccurate these observations made by the ALJ."  (Pl. Br. 5).  She

points to handouts given to Plaintiff by her therapist "at the time of her therapy around the time of the murder that she witnessed," id., to a treatment note from Plaintiff's gynocologist in 1993 noting that Plaintiff was "seeing psy[cologist? chiatrist?] 1x/wk - (witnessed supervisor being shot 1/yr ago), " id. at 6 (citing R. 986), and to an August 20, 1992 treatment note in which Dr. McNickle diagnosed "stress reaction" due to Plaintiff's reports of lack of energy since witnessing the murder, of inability to sleep at first but sleeping fairly well now, and of drinking 2-3 drinks each night.  Id. (citing R. 990-91).  As the Appeals Council found on its review, "this information does not provide a basis for changing the Administrative Law Judge's decision."  (R. 2).  That is so because the information neither demonstrates that Plaintiff was diagnosed with post traumatic stress disorder, nor requires a finding that it was a medically determinable impairment at that time (or at any time before December 31, 2000).

The ALJ acknowledged that Plaintiff received psychological treatment and support after witnessing the murder.  But she also noted that Plaintiff worked at substantial gainful activity for three years after witnessing the murder and that "there is simply no evidence that she experienced any significant psychological difficulties until 2004 at the earliest."  (R. 42) (emphasis added).  In fact, Dr. McNickle's treatment notes weigh against a finding that Plaintiff developed post traumatic stress disorder shortly after witnessing the murder.  At her first visit on August 19, 1992, Plaintiff reported that she had been without energy and "somewhat upset" since witnessing the murder, that she wasn't sleeping well at first "but says now she is sleeping fairly well," although "she has

9

been drinking more in the last few months." (R. 991).  As Plaintiff notes, Dr. McNickle

assessed "stress reaction."  Id.  At a follow-up visit nine days later on August 28, 1992,

Plaintiff stated that "she is feeling better, [and] has cut back on her alcohol intake

considerably."  (R. 990).  Dr. McNickle updated her assessment to "stress, fatigue," and

"discussed diet and exercise."  Id.  The tenor of these notes suggests that Plaintiff had

experienced an expected stress reaction to the mental trauma of witnessing a brutal

murder, but that she was adapting to that reaction.  Certainly they do not demonstrate a

medically determinable mental impairment of post traumatic stress disorder.

The statements from Plaintiff's coworkers do not require a different conclusion.

Plaintiff characterizes these statements as her employer's substantiation of her difficulties

at work.  (Pl. Br. 13).  The court does not agree.  Mr. White is currently the customer

service manager at Plaintiff's former employer, but at the time of the murder he "was the

administrative lead person for non-technical employees" and "was in the building."  (R.

969).  While Mr. White may possess authority to speak for the employer in some

situations currently, there is no indication he has authority to speak for the employer

regarding events in 1992.  Therefore, his statements regarding difficulty Plaintiff may

have had performing her work after witnessing the murder, or regarding alleged

flexibility or other accommodations provided by the employer (R. 970) may be based on

his opinion or perception of the situation but they cannot be accepted as the opinion or

statement of the employer.  Mr. Aukofer, on the other hand was "the manager in charge of

[the employer's facilities] in Wichita, Kansas when Ms. Lindley was working" there.  (R.

972).  Thus, he has at least apparent authority to speak on behalf of the employer regarding events during that time.  But, Mr. Aukofer's statement says nothing regarding Plaintiff's work performance after the murder, or regarding any flexibility or accommodations provided to her by her employer.  (R. 972-73).  And, although these statements no doubt reflect Mr. White's and Mr. Aukofer's recollections, reflections, and opinions regarding Plaintiff's condition at the time of the murder, those men do not have direct personal knowledge of Plaintiff's thoughts or mental condition at that time, and they are not qualified to present a psychological opinion in that regard.  Moreover, the court notes that the statements are dated 6 September 2013, and 9 September 2013, respectively.  Thus, the statements are these individuals' recollections recorded more than twenty years after the events upon which they purport to be based.  In any case, they cannot demonstrate that Plaintiff had the medically determinable impairment of post traumatic stress disorder before her date last insured.

Plaintiff also claims the ALJ erred in evaluating Dr. Kliewer's opinion.  She is correct when she argues that "[i]t is not necessary for Dr. Kliewer to have treated Plaintiff 'during the period of adjudication' for his retrospective diagnosis to be probative."  (Pl. Br. 15) (quoting R. 43 and Manning v. Sec'y of Health & Human Servs., 810 F. Supp. 1220, 1223-24 (D. Kan. 1993)).  As Plaintiff quotes from Manning, when the "objective evidence alone does not establish disability, it must be considered along with the subjective evidence and the retrospective diagnosis."  810 F. Supp. at 1224.  That is precisely what the ALJ did in this case.  She noted that "there is simply no evidence that

[Plaintiff] experienced any <u>significant</u> psychological difficulties until 2004 at the earliest"--more than three years after her date last insured, and about twelve years after the brutal murder.  (R. 42).  The court has identified seven reasons given by the ALJ to find that Plaintiff's allegations of disabling symptoms are not credible, and the ALJ also considered Dr. Kliewer's retrospective diagnosis and gave it little weight.  The court finds no error herein.

Plaintiff argues that there are "some records of treatment, as well as documentation that Plaintiff was receiving psychiatric therapy during the relevant time period."  (Pl. Br. 16).  As noted above, that evidence--the handouts from Plaintiff's therapist, the treatment note from Plaintiff's gynecologist, and Dr. McNickle's treatment notes--is a very slim reed upon which Plaintiff bases her argument.  It does not change the ALJ's finding of no significant psychological difficulties until 2004 at the earliest, nor does it change the bases upon which the ALJ relied to accord Dr. Kliewer's opinion little weight.

Plaintiff quotes <u>McGoffin v. Barnhart</u>, 288 F.3d 1248, 1252 (10th Cir. 2002) for the proposition that an ALJ "may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinions."  She cites <u>Victory v. Barnhart</u> 121 F. App'x 819, 823 (10th Cir. 2005) for the premise that an ALJ's finding that a physician's opinion is based on a plaintiff's own subjective report of symptoms impermissibly rests on the ALJ's speculative, unsupported assumptions. In doing so, Plaintiff argues that it was error for the ALJ to discount Dr.

Kliewer's opinion because it was "based exclusively upon the claimant's own subjective reports."  (Pl. Br. 17) (quoting without citation, R. 43).

Plaintiff's argument misses both the rule applied in <u>Victory</u> and the significance of the ALJ's findings here.  To be sure, <u>McGoffin</u> forbids speculative inferences from medical reports.  Moreover,

> [t]he practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements.  A psychological opinion need not be based on solely objective "tests"; those findings "may rest either on observed signs and symptoms or on psychological tests."

<u>Thomas v. Barnhart</u>, 147 Fed. Appx. 755, 759 (10th Cir. 2005) (quoting <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1083 (10th Cir. 2004)).  Citing <u>Langley v. Barnhart</u>, 373 F.3d 1116, 1121 (10th Cir. 2004), the <u>Victory</u> court held that the ALJ's finding that claimant's physician's "opinion was based on claimant's own subjective report of her symptoms impermissibly rests on [the ALJ's] speculative, unsupported assumption."  <u>Victory</u>, 121 F. App'x at 823.  The court held that the ALJ's finding in <u>Victory</u> was not supported by record evidence, ignored the physician's "examinations, medical tests, and reports," and omitted entirely one of the physician's examinations and reports.  <u>Id.</u> at 121 F. App'x at 823-24.  In <u>Langley</u> the court held the finding that the physician's opinion "was based only on claimant's subjective complaints" was error because "[t]he ALJ had no legal or evidentiary basis for [his] findings."  373 F.3d at 1121.  Thus, it is not an impermissible speculative inference merely to find that a physician's opinion is based on Plaintiff's

subjective reports.  Rather, such a finding is impermissible speculation only if it has no legal or evidentiary basis.  Here, the ALJ's finding has an appropriate basis.

The ALJ explained that Dr. Kliewer had treated Plaintiff only since November 2010, that he had no direct knowledge of Plaintiff's condition during the period under adjudication before December 31, 2000, and that there is no record of psychological treatment before February 2004.  (R. 43).  Based upon those three facts, the ALJ concluded that necessarily Dr. Kliewer's opinion regarding Plaintiff's condition before December 31, 2000 was itself "highly speculative," and could have no other basis than Plaintiff's reports.  Id.  The ALJ's rationale is without error.  Plaintiff does not point to error in the ALJ's bases, she just argues that the finding itself is impermissible.  Not so.

Plaintiff also argues that Dr. Kliewer based his opinion not only on information supplied by Plaintiff, "but also [on] his clinical observations and expertise in psychiatry including his understanding of Plaintiff's disorder, and prior Prairie View treatment records as well as other factors discussed at 13-14 above."  (Pl. Br. 18).  Plaintiff's argument does not compel a finding that she had a medically determinable impairment of post traumatic stress disorder before December 31, 2000.  Dr. Kliewer's clinical observations of Plaintiff did not begin until November 2010, and while those observations along with his expertise in psychiatry and his understanding of Plaintiff's disorders might reveal that Plaintiff had post traumatic stress disorder in November, 2010, and might lead him to make a retrospective diagnosis, his opinion regarding the onset date of that impairment is, as the ALJ found, "necessarily . . . based exclusively upon the claimant's

own subjective reports" because there was no other evidence available to him (beyond the bare date of the murder) suggesting when onset occurred.  Plaintiff's subjective reports of symptoms were found not credible by the ALJ.  As the ALJ found, there is no record of psychological treatment prior to February 2004.  As noted above, the evidence to which Plaintiff now appeals does not require a change in the ALJ's findings.  And, as the ALJ also found, Plaintiff "has acknowledged that her symptoms have progressed over time," she quit working after she took maternity leave and delivered a child, and she acknowledges that "her depression . . . got progressively worse after the birth of each child."  (Pl. Br. 21).

Plaintiff's argument that her condition got progressively worse after the birth of each child is one more reason suggesting that post traumatic stress disorder was not a medically determinable impairment in Plaintiff's case until much later.  As noted above, a step two decision is based on medical factors alone and Plaintiff does not deny that the onset of post traumatic stress disorder may be delayed after the trauma upon which it is based.  Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) 463-68 (4th ed. text revision 2000).  The ALJ explained that although "it is tempting to suppose that the claimant experienced some emotional distress secondary to her trauma, there is simply no evidence to adequately assess her mental state during the period of adjudication."  (R. 43).  An ALJ's disability decision may not be based on supposition or speculation.  Medical factors within the record evidence do not

15

demonstrate that post traumatic stress disorder was a medically determinable impairment during the period at issue.  Plaintiff has not met her burden of proof in that regard.

Plaintiff's claims that the ALJ's credibility determination is erroneous are similarly flawed.  Plaintiff first argues based on the evidence submitted to the Appeals Council that the ALJ erred in finding no evidence of significant psychological difficulties until 2004. As the court found above, the evidence submitted to the Appeals Council will not defeat that finding.  Plaintiff argues that the ALJ did not consider the accommodations for work made by her employer, but as the court found above, Plaintiff has not established that accommodations were made by her employer, and as noted above, the statements of Mr. White and Mr. Aukofer may not be accepted as the statements of Plaintiff's employer at any time during which she was working after the murder.

In her final attack on the credibility determination, Plaintiff argues that the ALJ merely engaged in speculation contrary to the facts when she found it is "far from clear that the claimant's decision to quit working" had to do with the psychological issues she faces now, and that "it is not at all implausible that [the birth of her eldest child] influenced her decision to quit working."  (R. 42).  Plaintiff's argument ignores the posture of this case and the burden of proof in a disability application.

The ALJ decided this case at step two of the sequential evaluation process.  The credibility of a claimant's allegations of symptoms is usually considered along with the RFC assessment between the third and fourth steps of the sequential evaluation process. However, because this case was decided at step two and because Plaintiff's allegations of

16

symptoms were relevant to the decision, the ALJ had to consider credibility at step two. Moreover, Plaintiff has the burden of proof regarding both the issue of credibility and the issue of a medically determinable impairment at step two of the process.  And, the ALJ's decision at step two in this case rested upon a determination that Plaintiff did not meet her burden to show that she had a medically determinable mental impairment before her date last insured--December 31, 2000.  (R. 44).  It is in this context that the court must determine whether the ALJ erred in her credibility determination.

Other reasons given by the ALJ for determining that Plaintiff's allegations are not credible included that Plaintiff's medical records did not show significant anxiety or depression before her date last insured, that Plaintiff acknowledged her symptoms progressed over time (more than twenty years passed between the date of the brutal murder and the date of the ALJ's decision), and that Plaintiff continued to work at substantial gainful activity for about three years after the murder.  (R. 42).  In addition to those reasons, the ALJ found that Plaintiff did not meet her burden to prove her allegations were credible because "[i]t is . . . far from clear that the claimant's decision to quit working in 1995 had anything at all to do with the psychological issues she is now experiencing" in that she had just delivered a child before she quit, and it is plausible that she quit work because of the new child.  Id.  These reasons are based upon a finding that Plaintiff had not proven her allegation that she quit work because of post traumatic stress rather than because of the birth of her child.  Confirming that her credibility decision was based at least in part on failure of the burden of proof, the ALJ stated, "the undersigned

17

simply cannot conclude with any certainty, based upon the available evidence, that the

claimant experienced any significant mental impairment prior to the date last insured."

Id. Plaintiff has shown no error in the credibility determination.

Finally, the court addresses Plaintiff's argument based on Social Security Ruling

(SSR) 83-20, that the issue in this case is "the onset of Plaintiff's severe mental

impairments." (Pl. Br. 10). If the medical evidence established that Plaintiff had a

medically determinable mental impairment before December 31, 2000, remand would be

necessary to correct the ALJ's finding otherwise. To that extent, Plaintiff is correct that

the issue here is the onset of Plaintiff's medically determinable mental impairment. The

question at step two however, is not the onset date of an impairment, it is whether the

medical evidence shows an impairment that is medically determinable and severe. 20

C.F.R. §§ 404.1508, 404.1528. If it does, there is a further question whether that

impairment meets the duration requirement. Id. at §§ 404.1509, 404.1520(a)(4)(ii).

Moreover, SSR 83-20 has little if anything to say concerning deciding the onset

date of a medically determinable impairment. SSR 83-20 is titled "Onset of Disability,"

and its purpose is "[t]o state the policy and describe the relevant evidence to be

considered when establishing the onset date of disability under the provisions of titles II

and XVI of the Social Security Act (the Act) and implementing regulations." SSR 83-20,

1983 WL 31249, at *1 (Jan. 1, 1983) (emphases added). SSR 83-20 is simply not

applicable to this case. Here, the ALJ based the decision on the fact that Plaintiff did not

meet her burden to establish that her post traumatic stress disorder was a medically

determinable mental impairment before her date last insured.  The brutal murder Plaintiff relies upon to establish her alleged onset date of disability and to support her allegation of a medically determinable mental impairment occurred more than eight years before her date last insured, more than eighteen years before she applied for benefits, and almost twenty-one years before the ALJ's decision in this case.  Plaintiff's date last insured for DIB was almost ten years before she applied for benefits in this case, and it was about twelve-and-one-half years before the ALJ's decision.  The ALJ was not called upon to decide whether Plaintiff's impairment became medically determinable after her date last insured, and there was simply no reason to decide whether Plaintiff's condition subsequently became disabling, or if so to establish an onset date of disability.

Plaintiff relies upon the ALJ's statements "that there is no doubt that the claimant currently suffers from symptoms of anxiety and post-traumatic stress disorder that affect her ability to engage in work activity" (R. 42) (emphasis added), and that "Dr. Kliewer's statements concerning the claimant's current level of mental functioning are quite articulate and reasonable" (R. 43) (emphasis added), and argues that the ALJ should have determined an onset date of disability in accordance with SSR 83-20.  (Pl. Br. 10).  The ALJ statements are at most admissions that in 2013 (more than twelve years after Plaintiff's date last insured) Plaintiff had medically determinable mental impairments of anxiety and post traumatic stress disorder which were severe within the meaning of the Act, and that Dr. Kliewer's 2013 opinion that Plaintiff was disabled was articulate and reasonable.  As noted above, there was no need to decide when Plaintiff's impairment

19

became medically determinable after her date last insured.  And, the ALJ's finding that Dr. Kliewer's opinion was articulate and reasonable was not a finding that Plaintiff was currently disabled.  First, the ALJ was not required to, and did not, evaluate Dr. Kliewer's opinion with regard to Plaintiff's <u>current</u> condition.  Once the ALJ decided that Plaintiff had not met her burden to show a medically determinable mental impairment before her date last insured, the case was decided and Plaintiff's condition twelve-and-a-half years later was irrelevant.  If the ALJ had made such a determination, it would be <u>dicta</u> and irrelevant to the ALJ's decision.  The cases cited by Plaintiff are clearly distinguished from this case because in each of them the ALJ found that the claimant had a medically determinable severe impairment and specifically determined that Plaintiff was disabled.  The error was a failure to properly determine the onset date of disability.  <u>Blea</u>, 466 F.3d 903; <u>Brockway v. Astrue</u>, 781 F. Supp. 2d 1145 (D. Kan. 2011); <u>Burgess v. Astrue</u>, No. 11-4182-SAC, 2012 WL 5949212 (D. Kan. Nov. 28, 2012).

Plaintiff has shown no error in the Commissioner's decision.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING that decision.

Dated this 13th day of June 2016, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**

20